of the day, 22-12581, Snell v. United Specialty Insurance Company. And we have Mr. O'Hara here for the appellant, Mr. Kleeman for the appellee. Mr. O'Hara, whenever you're ready, no hurry. Good morning, Your Honors. Tom O'Hara on behalf of the appellant. First time here, long way from Baltimore County, Alabama. You'll be fine. The salient issue is whether the underlying claims are incidental to or in connection with landscaping. That's the correct construction under the arising out of language in the limitation on coverage endorsement. The district court answered that question affirmatively. It said that the construction of the retaining wall to control erosion and capping it with wood for aesthetic appeal falls under one or more definitions of landscaping. Can I ask you a question just about the, it does seem to me that the work here is being done by the word landscaping, you know, arising out of, fine, however broad that is, it's got to arise out of landscaping. And so, what do you think, I'm going to ask both sides, what do you think the controlling criterion is for something to be landscaping? Is it, you know, is it nature? Is it aesthetic? Is it what? Like, what makes something landscaping or not? Because I have a hard time, frankly, as soon as I think it's nature, I'm like, no, I don't know, because like a stone path walkway might be landscaping, and as soon as I think it's something about aesthetics, I'm like, no, I don't know, because regrading the yard would be landscaping. So, what's the controlling criterion that makes something landscaping in your view? Well, I think, you know, the case law says we're to look at definitions, and the definitions do speak to improving the aesthetics of improvements on the property, but it can't be just related to nature, because hardscapes for patios, that's part of landscaping. And the reason I ask is that there's some limitation, though, to that, right? Because my stone pathway, intuitively, does seem like landscaping to me. My concrete driveway, intuitively, does not seem to me like landscaping. And I don't know where on that spectrum I get off the ship. Correct. Correct. And, you know, even irrigation, sprinkler systems, you know, that's nature, but I think it has to do with the aesthetics, you know, the natural beauty and contour of someone's landscape. You wouldn't think, and I recognize this is, I might be singing to the choir here, but would you think regrading your yard to avert flooding in the basement would constitute landscaping? It doesn't really change the aesthetic value of the yard at all. It's purely functional. I do, and I think it happens all the time. So it's not really about aesthetics. This is, you can see my conundrum here. It's not really about aesthetics, because functionality can count. Functionality, too, absolutely. If someone wanted to install a hot tub, for instance, you know, they might want to put a hardscape patio down where they install that hot tub, and they might even put shrubbery on there. If they install the shrubbery too close to the hot tub and someone falls over onto the ground, if that was the facts of our case, I don't think we'd be here. Don't you have a bigger problem, though? You have an insurance application in which he was asked, Mr. Snell was asked whether his work included any recreational or playground equipment, construction or erection, and he answered no, and Alabama law requires that every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider endorsement or application, which is part of the policy. Without the application, I'm actually following you. The application is a big stumbling block for me. I'll just let you know that. Yeah, I understand, and I appreciate that, but I think that's a, I don't think the statute automatically incorporates the application into the policy. If the policy says that the policy is based on... Doesn't Russell say the opposite of that, though? I know that's the argument you make in your brief, but the Russell case from the Alabama Supreme Court seems to say the opposite of that. Does it not? Your Honor, I can't speak to that. I mean, I'm not familiar with the Russell case. All right. I think it was cited in the... If you're telling me it does, then I'd have to accept that, but... I think, here's the thing. I think Judge... Hold on one second. I think Judge Luck is right. From the statute that Judge Branch read, I agree with you, that it doesn't seem like from the plain language of that statute that an application is necessarily made part of the policy. It seems like it would have to be an application that is made part of the policy, but Russell, I think, rightly or wrongly, has read that statute to say, essentially, every application is deemed to be part of the policy. Except in the Russell decision, which, I apologize, I'm not familiar with it. But it's an Alabama Supreme Court decision. Yeah. The question, then, is, what is the remedy if there's an incorrect statement on an application? Well, it wasn't incorrect. I mean, what they have said, I'm sorry, what they have said is that they wouldn't have issued the policy or they would have increased the premium. That's not the correct remedy. The correct remedy, if you believe that there's a material misstatement on the application, the remedy is rescission. But there's not a misstatement in the application. He is not involved in recreational activity. I want to jump out a little bit. So as I understand it, you have agreed and admitted in the litigation below that the actual building of the trampoline is recreational activity and not landscaping, right? You agree with that? In other words, the assembly, right. The assembly and actual putting it in the ground and the actual trampoline itself, not the everything around it. You agree with that? I agree that that's a very difficult argument for me. Okay. But I will say this. I did submit evidence that landscapers in my client's community, his competitors, routinely do assemble and install trampolines in a backcountry setting. So as I understand Alabama law, the duty to defend is defined by the underlying allegations in the lawsuit and by evidence in the litigation between the insured and the insurer. Correct. It's not a four-corner statement. Okay. So let's look to those two things. So thing one is the allegations of the complaint. I've read the underlying complaint. There is only one count against Snell, right? Correct. Count five. And that count in the main sort of paragraph says, Plaintiff averse that outdoor expressions Mr. Snell, negligently and or wantonly assembled, constructed, and installed the trampoline in the backyard. That's it. Your Honor, that count starts off with an incorporation of the previous allegations from the complaint. And number 20, the allegations and the general allegations that are incorporated in that Here's the problem. You adopt and incorporate all the allegations as fully set forth herein. Herein is the amended complaint, and the amended complaint does not have the allegations that you just read from paragraph 20. I believe the first amended complaint says that it adopts all of the claims that are previously made in the complaint. And I agree with you. The pleading is not artful. When they filed the first amended complaint, they did not reallege the original claims that they made from the complaint. They said, we adopt everything we say in the complaint, and we add this. Well, not in the count five against Mr. Snell. The first paragraph says, Plaintiff adopts and incorporates by reference all prior paragraphs as fully set forth herein. And herein doesn't include that allegation. And if you go back to the original complaint, the reference to defendant doesn't include Mr. Snell, because Mr. Snell wasn't a defendant in the original complaint. So the general allegations that defendant did X or Y do not include Mr. Snell. And so the reason I'm asking this is not to get into it with you, but to ask this question, which is, assuming that the only allegations are that the trampoline itself was assembled, constructed, and installed incorrectly in the backyard, you agree that you would lose, if I read it, to be limited to just the trampoline itself and not anything surrounding it? Because the trampoline itself is not landscaping, right? I do. Okay. In all fairness, I think assembling a trampoline and dropping it into a hole is not... Right. It would be very hard to argue that that's landscaping. Okay. And I appreciate that. So one issue I think we have to decide is what the actual duty to defend is. And then once we decide that, we have to decide, I think the question that Judge Newsom was asking about is whether the wood framing and all the other stuff that goes along with it, assuming that is alleged below, is landscaping. And that is a separate issue in question that deals with the application and the definitions. But can I ask you a question about your bad faith claim? So in Alabama, there is a bad faith claim, and then there's an abnormal bad faith claim. And as I understand it, the normal bad faith claim is a failure to pay. And an abnormal bad faith claim is a failure to investigate. And you are traveling solely under the abnormal bad faith claim, which is hard to reach. But I'm trying to understand the limiting principle. You have alleged that the insurance company failed to investigate, failed to adequately investigate. What specifically did they do that pushes this into an abnormal bad faith situation, other than the bare allegation that they failed to sufficiently investigate? The denial of coverage letter that we received has no reasoning. It only, in conclusive matter, says that this is not landscaping. Doesn't provide any cognitive evaluation of what we submitted to support the claim. So on its face, I believe it's evidence of a lack of cognitive evaluation of the claim. And I believe that when we submitted evidence of the retaining walls and the wood cap, that that was evidence of landscaping. So I don't believe that they presented evidence that they looked at this claim and seriously and undertook a cognitive evaluation. But I would like to address that application issue. Because regardless of whether there's an incorrect answer in there, and I don't believe it's incorrect. My client had not done any work related to recreational equipment in over two years in his entire history. I think we put into evidence that he installed one other trampoline for the same client. And I'm not suggesting it's incorrect. It's just that was his answer and the insurance company gave him insurance based on that application. Well, see, and that goes to intent. And I don't think the policy is ambiguous. So the insurance company's intent under the application doesn't come in. The policy is clear. It provides coverage for claims arising out of landscaping. And I do understand the point that we've got to define landscaping first. But, you know, if you look at the definitions, they're very expansive. And I have trouble too, where is that line? Counsel, doesn't the application tell us, it's not relevant for whether he lied or not to the intent of the insurer or the insured. What's relevant is the insurance company is seeming to draw a line in understanding what landscaping is between recreational activities and, I think there's a second thing there that I'm forgetting, and landscaping. And that drawing of the line seems to indicate that at least there's a carve-out for what this contract understood landscaping to be for the very thing that we're talking about. Well, I think that you can have dual purposes. I mean, I think that, you know, we can't just look with a tunnel vision at, this is just the installation of a trampoline. The whole reason for an in-ground trampoline is to preserve your view. This house happens to be on the bay in Point Clear, Alabama. But, you know, it's the aesthetic incorporation of this trampoline into the backyard landscape. I mean, it'd be much cheaper to just put it above ground. Let me ask you this. If we think that under Russell, we have to consider the sort of the representations made in the application. So let's assume, it's part of the policy. I recognize you dispute that, but let's assume it's part of the policy. Let's assume we have to take that, but let's assume we also agree with you that sort of the better ordinary understanding of the word landscaping would include retaining walls and wooden caps for aesthetic purposes or whatever. What now? Is that now, is the policy ambiguous because it seems to be saying two different things or does the more specific representation in the application control over the more general language in the policy? I don't believe the policy is ambiguous at all. It says that my client's entitled to coverage for claims arising out of landscaping. And the district court found that building retaining walls and putting. Well, but do you understand my question? So I agree, I understand that you don't think the policy is ambiguous because it says arising out of landscaping and you think landscaping covers this thing. But what if the application, which under Russell we have to conclude is part of the policy, seems to suggest that maybe this particular recreational thing doesn't count as landscaping? Now, is the policy ambiguous because it's internally contradictory? And I mean, the question that I'll ask your adversary is I wonder at that point, when, if ever, does this like contraproferentum canon about construing policies in your favor, when is that brought to bear, if ever? Well, I think it's reading a lot into the application to say that that works as an exclusion that says this policy covers claims arising out of landscaping unless they're associated with Recreational equipment. Insulation recreational equipment. You're reading an exclusion just based upon that application. And look, they don't define landscaping in the policy, so that should cut against them. They don't define the arising out of language in the policy. I think the case law is pretty clear on that, that that's broad. It's about as broad as it can be. It's not caused by landscaping, it's incidental to or in connection with. And that's exactly what the district court did, and that's why we believe it erred. It held that because the claims in the lawsuit allege that the dangerous condition was, you know, the use of the trampoline and its lack of netting and padding, there's no coverage. Okay? And that's not consistent with the arising out of language. And I disagree with her interpretation of the claims, with all due respect to you, Judge Luck. I believe clearly that first amended complaint incorporates everything in the complaint, and to construe that one paragraph at the beginning of the claim, negligence claim, that incorporates all the paragraphs set forth previously, I believe that's broad enough to include what was alleged in the complaint, that the dangerous condition is what surrounds the trampoline. I honestly do a fair reading. I believe that that would be the case. Okay. We've held you over, but you'll have your full rebuttal time. Let's hear from your adversary. Good morning, Your Honors. Doug Kleeman for the Appellee United Specialty Insurance Company, and may it please the Court. I know you, I think we're going to go straight to what landscaping means, and I appreciate that that was the question you were going to be asking me. The District Court aptly discussed what the definition of landscaping is based on Alabama law that requires the Court to consider the ordinary meanings of landscaping. And the District Court identified each of the definitions provided by each of the parties as well as its own definitions. The District Court did address the legal and statutory definitions provided by Mr. Snell and rejected those under Alabama law that undefined words in insurance policy must be construed by their ordinary meaning. Okay. So let's just jump to ordinary meaning. So in your mind, what is the ordinary meaning? What's the controlling criteria? Sure. To improve the appearance, as by planting trees, shrubs, grass, or altering the contours of the ground, to improve or enhance the natural landscape. So when we talk about... So in your mind, regrading one's yard to prevent flooding in a basement is not landscaping because it doesn't improve the appearance at all. It might make the appearance worse, but it serves a very important function, not landscaping. Sure. It's to improve or enhance the natural landscape. So if grading were to enhance, and I don't know much about grading, but if grading were to enhance the natural landscaping, it could be considered landscaping. So you don't then deny that landscaping can include things that are not done for aesthetic purposes, but that are done solely for functional purposes? I think it depends upon the circumstances, Your Honor. Why? I don't think I understand what that means. Well, for instance, a pool, a swimming pool installer, to install the swimming pool, the swimming pool installer is necessarily going to have to dig a hole, retain that hole, install drainage for that hole, and pour the concrete decking around the pool. Those acts in a vacuum could constitute landscaping, but under the circumstances, it wouldn't be landscaping at the pool installation, and we wouldn't expect... Counsel, if the guy from the manufacturer came, in other words, let's assume the manufacturer did installations, and you call the guy up in California and said, you mind coming out to Point Clear, Alabama? It's real nice here. Sometimes the fish jump out of the water and come on the wall, and come install my thing, and he dug the hole, and put the capping around, and put the drainage in, and put it in. Would we ever say that that was landscaping? You're saying if there was one person who did the... If the manufacturer. So the company who manufactures trampolines. No, we wouldn't say it's landscaping. Right. He's not... The only reason we're here is because the landscaper happened to do something different than landscaping? I believe that that's it. And I believe that we're here because the insurance policy is a... It's not a broad form policy. It's a landscaping policy, and that's defined by the policies insuring agreement. This isn't an exclusion that we're talking about. It's a coverage issue. Well, it's a coverage issue, but it's coverage under the policies coverage grant.  We don't look to an exclusion. We look to what the policy covers before you even get to the exclusions. The policy covers bodily injury or property damage caused by an occurrence that occurs during the policy period, and that arises out of the insured's performance of landscaping. That's the coverage grant. So we're here today... Can I ask you another ordinary meaning question? Because I'll have to confess that I've found the traditional sources for ordinary meaning pretty unenlightening here. I went beyond the definitions that the district court talked about and went and tried to find all the definitions that I could find in all the dictionaries in my office, and they just kept pointing me in different directions. I don't mean this as a joke. Of what relevance to our inquiry is it, if I queried JetGPT, whether installing an in-ground trampoline is landscaping? And it answered yes with an explanation that I'll read to you if you want me to. It says, yes, installing an in-ground trampoline can be considered a part of landscaping. Landscaping involves altering the visible features of an outdoor area for aesthetic or practical purposes, and adding an in-ground trampoline would modify the appearance and function of the space. It's a deliberate change to the outdoor environment, often aimed at enhancing the overall landscape and usability of the area. Is that relevant? I'd say that JetGPT isn't relevant because we don't know what the source is. We don't know who programmed it. But we know basically how it works, right? It goes out and scrapes the internet for every last little bit of information it can find. I don't know sort of the technical know-how, but we know basically what it does. I mean, is it any less an indicator of ordinary meaning than a dictionary? I believe so because, again, we don't know what source it took that statement from. If it went past all of the regular dictionary meanings, all of the various other meanings, and went, for instance, to a legal treatise, went, for instance, to an in-ground trampoline company's website, I don't know where it came from. Do you think it's possible that the compilers of dictionaries might make the same mistakes? And is there any reason that we ought to be treating dictionaries as somehow more reliable than this, I think it's fair to say, infinitely broader tool? And you're right, like it might, at the margin, scoop up some idiosyncratic definitions. But it seems to me, given the scope of the project, those would be drops in the ocean. I think relying on GPT would be akin to relying on a statement in a brief of an attorney you trust that doesn't have a citation. You trust the attorney to find correct citations and to cite citations correctly, but you don't know the source. And of course, CHAT-GBT has never made up a source of any kind. That's never happened before. But let me ask you a question. Is the answer or discussion that we're having that this is all well and good, but we have to look at it in the context of the application itself, does that change the analysis of where we just look to definitions and try to find whatever the definitional source is, whether it's from our AI overlords or Webster's? I think the application is part of the consideration. Because when construing a term in an insurance policy, we have to look to the policy as a whole, including the endorsement of the application. So if we do that, so the question is, if the installation of the trampoline is, which I think is the question that we asked CHAT-GBT, if the installation of the trampoline is landscaping, what's relevant in the application to deciding the answer to that in this particular context, in this particular case, is no. I think the fact that the application distinguishes landscaping and lawn care operations, which are the operations that Snell described his business as, the application distinguishes those operations from playground and recreational operations. Is it recreational operations? I just want to get the language. Lawn care is recreational equipment and playground equipment. So rather, see, we're operating in an insurance contract world where we would normally simply be looking at the definition of landscaping, but because we're in an insurance world where there was an application and where Alabama law acknowledges that that's part of the equipment, I mean, part of the insurance policy, the fact that he answered no to recreational equipment we do have to look at what that would have meant to an insurance company had he checked yes. It would have been a different policy, presumably. Yes. In fact, we established that in our motion for summary judgment with an affidavit from United Specialty, that yes, had they known whether it was at the time of the application or any time thereafter, that Mr. Snell would be installing, building, constructing, recreational playground equipment, the policy would have been modified. What was the exact question that he said no to? It was, I don't have it in front of me, but I think it was, do you do, I believe it was, do you do... Is your work involved? Does that sound right? I don't think it said involved. I'm sorry, I don't have the application in front of me. I know it's part of the record, I just don't have it with me, I apologize. Snell, this, here, Snell was asked in his application whether his work included, quote, any recreational or playground equipment construction or erection, and Snell answered no. So whether his work included. Okay. That was not a quote. That was not. I think that what's helpful is that the application is distinguishing landscaping operations from playground and recreational equipment. Here's the actual question. Do you do any recreational or playground equipment construction or erection? Okay. Was that right? That sounds right. So I think, again, it's distinguishing playground and recreational equipment construction and erection from landscaping. So maybe I'm just missing something, but how then does the application actually sort of like contradict or control what landscaping might or might not mean? I mean, the retaining wall and the wooden cap might still be landscaping even if the recreational equipment installation is not. Sure. So that's where I think we have to consider the facts as a whole and the circumstances of the case, which is what the district court did. And sort of like my analogy with swimming pools, we've got the same analogy with people who dig highway tunnels. To dig a highway tunnel, you have to necessarily excavate a hole, put a retaining wall around it, and make it aesthetically pleasing with lighting, bricks, or stones. If this policy were limited to highway tunnel operations, I don't think we'd be here today debating whether the installation of a trampoline qualified as highway tunnel operations. And that's because, notwithstanding the fact that both types of operations include digging holes, building retaining walls in those holes, and creating drainage, that they're two very distinct types of operations. Same with septic tanks. Same with the construction of skyscrapers and office buildings. They all require digging holes, retaining walls, and drainage, and some aesthetics. That doesn't mean that they're all landscaping operations. So we have to look to the facts of this case to decide whether there's a duty to defend, whether the claims against Mr. Snell arise out of landscaping operations. So we'd look to the allegations in the complaint. Even if the allegations in the complaint were to establish no duty to defend, which we think that they are, because again, the only allegations against Mr. Snell are with respect to the construction of the trampoline. But even if, you know, the allegations establish no duty to defend, we then look outside the complaint, right, to extrinsic evidence. Because in Alabama, insurers, when there's no duty to defend under the, based solely on the allegations, the insurers are obligated to look to extrinsic evidence. So what did United Specialty do? They reviewed the allegations and then asked Mr. Snell to submit a bunch of information, including photographs of the trampoline, which we have right here, and that's in the record. Invoices, explanations, you know, he notified, they considered him, his notification to United Specialty that he installed the trampoline, the in-ground trampoline in 2017. All of the acts in connection with his digging of the, what he characterizes as the trampoline pit, it all arises from the construction and installation of the trampoline. You can't separate those things. Everything arises from the trampoline. There would be no trampoline pit but for Snell's construction of the in-ground trampoline. Because most people don't typically dig holes and leave gaping holes with cement walls and wood caps without then putting something in the hole. Sure, and the only purpose, it's undisputed. The only purpose of Mr. Snell's digging that hole was to install the trampoline because he was hired to make an in-ground trampoline. The only reason he built the retaining wall in that pit, again, what he refers to as the trampoline pit, was to protect the trampoline pit from collapsing in. The only reason he put what he refers to as the trampoline border was to make a border around the trampoline. Let me ask you this. I asked your adversary a question earlier about this contra-preferentum principle, right? What's your understanding of how Alabama law treats that principle? Is it something that operates on all insurance contracts, only ambiguous contracts? When does it come into play? Is it a rule of last resort? Does it come into play before extrinsic evidence? How does it work in Alabama? You're talking about considering a term of a policy? Yeah, reading the policy, you know, sort of strictly construing the policy against you and in his favor. Just the general principle. I'm sure you do this. You've encountered this. This is an argument you get hit with every time, right? So how does it work in Alabama? Sure. So the policy is construed based on the intent of the parties, the intent of the parties being restricted to the four corners of the policy itself, plus the rider's application and endorsements. If there's any ambiguity, then they may look to extrinsic evidence. So here's the reason I ask, is that I sort of went down this rabbit, that's not true, my law clerk went down this rabbit hole, about how this works in Alabama, and Alabama seems to have sort of like two slightly different lines of cases, some of which treat contra profferendum as a universal principle that applies to policies like at the outset. So the Alabama Supreme Court will say things like, the contract of insurance will be strictly construed against the insurer and liberally in favor of the insured, period. And then they also have the more traditional formulation, where it might say something like when analyzing an insurance policy, a court gives words that are common everyday meaning and interprets them as reasonable person would, if there is an ambiguity as a matter of law, then we construe it in favor of the insured and against the insurer. So how does it work? It's the latter, Your Honor. Despite the fact that the Alabama Supreme Court sometimes says, yeah, this is just always a principle and it applies to every term of every contract of insurance all the time. There's no, under Alabama law, and really the law of, I'd say, most states, but certainly under Alabama, you only construe the allegations in favor of coverage, I'm sorry, you only construe a term in favor of coverage if the term is ambiguous, otherwise it's not ambiguous, so there's no need to construe it. And if we've spent all this time sort of grinding over the ordinary meaning of the word landscaping, and then there's this indication of what landscaping might or might not mean in the context of this policy and the application, does that render the contract ambiguous? No, because we've looked to the definitions of landscaping, and again, when we look to the duty to defend, so I think we have to distinguish two issues here. We have to consider what does landscaping mean, generally, okay, but then we have to consider the duty to defend the insured against a particular claim, we have to look to the allegations against the insured to determine, based on the insuring agreement, if the liability alleged against the insured arises out of landscaping. So here, that's why we look to the allegations. What are the allegations against the insured? That he negligently constructed and installed a trampoline. Is the construction and installation of a trampoline landscaping in the context of these facts? No, and that's understood. So then we go to, okay, if we have to look, if we have to consider whether Snell's construction of the trampoline pit or his retainer of the trampoline pit, if that also arises out of it, none of that would have been done but for the installation of the trampoline, and trampolines are not landscaping. Okay, very well, we kept you over. Thanks so much for your patience. I do have one question, too. Is there any way I could have about one minute just to address the indemnity and bad faith? Yeah, sure. Yeah, that's fine. That'll take me one minute. With respect to indemnity, because in the event the court were to find that there was a duty to defend, Mr. Snell has also sued United Specialty for breach of the duty to indemnify. We moved for summary judgment, and the court granted summary judgment on that issue. The court finding, as is established under Alabama law, if there's no duty to defend, there can never be a duty to indemnify. Now let's say this court finds that there is a duty to defend, United Specialty should still be entitled to summary judgment on the duty to indemnify. Mr. Snell admits that indemnity is not right until there's a judgment against the insured. Mr. Snell has sued United Specialty for breach of the duty to indemnify. Under Mr. Snell's own characterization of his claim, his claim is not right. He hasn't been able to meet his burden of proving that United Specialty breached a duty to indemnify. So we maintain that at least the granting of summary judgment on the duty to indemnify be maintained. Finally, in regard to the bad faith, we've established through the record that United Specialty performed a thorough investigation. It received the claim notice, assigned it to a claims attorney who evaluated it, asked Mr. Snell for more information to evaluate the claim, and provided the covering position. Permitted Mr. Snell to submit any additional information he thought that he wanted United Specialty to consider. United Specialty received a letter, a follow-up letter from the attorney, which didn't provide any new information, and simply stated, we think that landscaping is broad enough to include trampoline installation. United Specialty considered everything that was available to it. All of the allegations, all of the information provided by Mr. Snell. They can only be tasked with considering the information that's available to them at the time they make their decision. They've done that. Mr. Snell hasn't established that they didn't perform a thorough evaluation. Got it. We would maintain that the motion of summary judgment on the bad faith claims be maintained Okay. Very well. Thank you so much. Thank you, Your Honors. Alabama law does say that insurance policies are construed generally against the insurer. Well, in fairness, they say both things, right? They're talking out of both sides of their mouths. But whether the policy is ambiguous or not, I mean, your law clerk, I guess, Found both lines of cases. So, I don't know. Maybe that is a certification question, but I've been practicing insurance coverage for a while, and I've always traveled under that rule. I'm curious. Let me ask you this, and this is not a gotcha question. But you didn't raise contraproferentum as an argument in your favor in this case. You made this exclusion argument, which I'll confess I disagree with. But contraproferentum, I would have assumed, would have been front and center in a case like this where nobody seems to really know what landscaping is or isn't. But it's not an argument you made. Is that something we can consider despite the fact that you didn't make it? I think that without construing the policy in my client's favor, that the claim still arises and is incidental, too, in connection with landscaping. I mean, what we've heard is that everything he did is installation of a trampoline. I think what Judge Newsom is asking, and I apologize if I'm misstating the question, is if your opponent believes that the language is not ambiguous, and you believe the language is not ambiguous, and the district court believes the language is not ambiguous, and no one has argued at any part in here that the language is ambiguous, how can we apply a rule of construction under Alabama law which favors your client in the case of an ambiguous statute or ambiguous provision? In the case of an ambiguous coverage provision, then I haven't argued that because I don't think it's ambiguous. I'm going under the other line of cases. The insurance policies, just as a general matter, are different than standard contracts, and they're always construed liberally in favor of coverage. And there are many, many cases, and there may be other cases that seem to contradict that. And so then separate question from Judge Luck's follow-up to mine, that's not an argument that you, say, put in your brief. You know, you didn't say there's this line of Alabama cases that says that contraproferentum applies across the board despite ambiguity or despite the lack of ambiguity, but it should favor me anyway. Is that a principle of interpretation that we can, if we think that's what the Alabama Supreme Court is telling us, that we can consider? Yes, and I think I included that in the standard of contract construction in my brief. Okay. The contrapreferendum rule or the rule that insurance policies should be construed in my client's favor. I guess where we have a fundamental disagreement is, you know, on the scope of what is landscaping. I think that, you know, what my client did in order to – He gave you – so, counsel, he gave the pool example, which I think is a good one. So you get a pool guy to come out. Pool guy installs pools. He digs a hole. He puts drainage in. He puts some concrete or some pavers on the outside to make it look real nice. And there's a hole that's dug, and they concrete it. They spray that special stuff for pools, and they put the chlorinated water in. Is that guy a landscaper? No. No, because you know what? In Alabama, you need a general – you need a home builder's license in order to do that work. But he's moving earth. But, counsel, he's moving earth. He's changing the nature of the landscape. It's real pretty. People like a nice pool. I like a nice pool. You know, why is that not landscaping under the ordinary – not statute – under the ordinary understanding of landscaping, as Chet GBT would tell us? Because it's – it falls under the definition of general contracting under Alabama law. Now, it may – there may be disciplines of landscaping incorporated within different trade disciplines. You know, people that paint, you know, sometimes they drive a hangwall – hang drywall. Hang drywall. Sorry. You know, so that's my whole point here. The installation of a trampoline, assembling and dropping the trampoline into the hole, is not mutually exclusive from elements of landscaping. And that's what the district court found. That entitles my client to coverage. And on the application, just because my client said that, no, he doesn't install recreational equipment, I think it's a stretch to say that that works as an exclusion under the coverage granting part of this policy. Thank you very much. Thank you. That case is submitted, and we'll move to the next.